IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARY SHULTZ,                                    08-CV-886-BR

        Plaintiff,                          OPINION AND ORDER

v.

MULTNOMAH COUNTY and
CECILIA JOHNSON,

        Defendants


RICHARD BUSSE
Busse and Hunt
621 S.W. Morrison St., Suite 521
Portland, OR  97205
(503) 248-2131

        Attorneys for Plaintiff

AGNES SOWLE
Multnomah County Attorney
JENNY M. MORF
Assistant Multnomah County Attorney
501 S.E. Hawthorne Blvd., Suite 500
Portland, OR 97214
(503) 988-3138

        Attorneys for Defendants


1  -  OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on the Motion (#18) for Summary Judgment of Defendants Multnomah County and Cecilia Johnson.  For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion as follows:

1.  **GRANTS** Defendants' Motion as to Shultz's Claim One against Multnomah County for violations of 42 U.S.C. § 1983;

2.  **GRANTS** Defendants' Motion as to Shultz's Claim One against Johnson in her official and individual capacities for violations of 42 U.S.C. § 1983;

3.  **DENIES** Defendants' Motion as to Plaintiff's Claim Two against Multnomah County for wrongful discharge; and

4.  **GRANTS** Defendants' Motion as to Plaintiff's Claim Three against Multnomah County for violations of Oregon Revised Statute § 659A.200, *et seq.*


## <u>BACKGROUND</u>

The following facts are undisputed or, if disputed, are viewed in the light most favorable to Plaintiff.

Plaintiff Mary Shultz was the Assistant Director of the Elections Division of Multnomah County from January 28, 2002, until February 15, 2008, and managed a staff of three full-time employees.  Shultz was responsible for the administrative

2  -  OPINION AND ORDER

functions and activities of the Elections Division.  An essential function of her position was to develop, to plan, and to implement the goals and objectives of the Elections Division. Her duties specifically included managing the Elections Division when the Director was absent, conferring with management to identify the needs of the Elections Division, developing goals and objectives for the Elections Division, and reporting on the Elections Division's provision of services.  Shultz had a primary role in making policy decisions based on interpretation of elections laws in politically sensitive areas.  She also received good performance reviews as Assistant Director.

Defendant Multnomah County is a "home-rule" county in the State of Oregon.

Defendant Cecilia Johnson was the Director of the Department of Community Services (DCS),[1] during all times material to this matter.

The Multnomah County Elections Division conducts all local, city, county, state, and federal elections for the citizens of Multnomah County.  The Elections Division is required by law to perform all functions relating to the conduct of elections, and the Elections Division interprets and applies the election laws. One of the laws interpreted and implemented by the Elections

---

[1] DCS is composed of five separate divisions:  Elections, Animal Services, Land Use and Transportation, Water Quality, and Tax Title.

3    -  OPINION AND ORDER

Division is the Help America to Vote Act (HAVA), 42 U.S.C.
§ 15481, *et seq*. HAVA is a federal law that requires the County
to provide a voting system that is accessible to individuals with
disabilities in a manner that provides the same opportunity for
access and participation as for other voters and requires the
County to provide outreach services to voters with disabilities.

Shultz was the County's HAVA representative and was involved
with interpretation and implementation of the law since 2003. To
implement HAVA, the Elections Division established Voter
Assistance Teams (VAT) to enhance outreach to voters with
disabilities. Shultz supervised three VAT coordinators and
spearheaded the VAT efforts.

In July 2006 the Multnomah County Auditor commenced an audit
of the Elections Division (the 2007 Audit). In June 2007, the
Auditor published the results of the audit. The 2007 Audit found
the VAT program was larger than necessary and recommended the
Elections Division scale it back. After the 2007 Audit was
published, Johnson began changing VAT policy. Specifically, she
reduced temporary staff, directed permanent staff to handle VAT
needs, and terminated outreach to care facilities that had
previously used VAT services.

At some point after the 2007 Audit was published, Shultz
became concerned about the needs of voters with respect to HAVA
outreach and the adequacy of the budget to meet the needs of the

2008 general election.  At different times after the publication
of the 2007 Audit, Shultz expressed her concerns to Johnson; to
Jill Wolf, who was temporarily assigned as Shultz's supervisor
from October 2007 to April 2008 by Johnson; and to John Kauffman,
who was the Director of the Elections Division at the time.

In Fall 2007 Johnson began working on the Fiscal Year 2009
(FY09) budget proposal, which included an anticipated budget
reduction of four to six percent for DCS.  The Elections Division
was the focus of these cuts.

On October 19, 2007, Johnson noted in an email to her Budget
Manager, Gerald Elliot, that the Elections Division was top-
heavy.  Sometime in October, Johnson identified the Assistant
Director position for elimination.  Johnson believed she could
make up the shortfall in the DCS budget by eliminating the
Assistant Director position, for a savings of approximately
$140,000, and by making another $100,000 reduction in materials
and supplies.

On November 14, 2007, Wolf announced to the Elections
Division staff that there would be budget cuts and that layoffs
were possible.  On December 3, 2007, the County Budget Office
identified a three percent reduction in the FY09 budget totaling
$254,622.

On November 27, 2007, three Elections Division workers sent
an anonymous letter addressed to Rhys Scholes, the Communications

Policy Director for Ted Wheeler.  Ted Wheeler was the Multnomah County Chair and a member of the five-member Board of County Commissioners during all times material to this matter.  The workers expressed concerns about the possible removal of the Assistant Director position because of budget cuts.  The workers also noted the tension within the Elections Division because of the VAT program and pointed out that Shultz was in charge of the program.  Shultz, however, was not involved in the writing or the sending of this letter.

Shultz told Kauffman that she was going to speak to the Board of Multnomah County Commissioners (BCC) regarding her concerns, but Kauffman told her to wait. In a memorandum to Johnson dated December 3, 2007, Kauffman informed Johnson that her proposed budget was not sufficient to meet the needs of the general election.  On January 13, 2008, Kauffman wrote a second letter at Johnson's request stating he now supported Johnson's proposed budget because he had gained information that he did not have when he wrote the first letter.

On January 18, 2008, Shultz and her three subordinate employees sent a letter addressed to Wheeler at the County Chair's office.  In the letter, they raised concerns about the possibility of increased legal exposure arising from Johnson's changes to the VAT program.  Bill Farver, Wheeler's Chief Operating Officer, received and read the letter.  Shultz alleges

she spoke to Farver by telephone the week after the January 18, 2008, letter was sent, and Farver acknowledges the conversation.

Johnson issued a layoff letter to Shultz on January 31, 2008, with an effective date of February 15, 2008.  In her letter, Johnson stated the position of Assistant Director was being eliminated because of the budget shortfall.

On February 14, 2008, Johnson forwarded her budget recommendations for FY09 to Wheeler and stated the proposed Elections Division budget, which had not been reduced since FY2000, would be now be reduced by $258,000.  Johnson also explained the reductions were made by eliminating the Assistant Director position, reducing materials and supplies by $100,000, and implementing other operational efficiencies.

The adoption of the final Multnomah County budget each fiscal year requires the County Chair to take recommendations from department directors and to propose an executive budget, which is subsequently reviewed and adopted by the BCC.  Johnson's proposed FY09 budget reduction, including the elimination of the Assistant Director position, was one of many steps in that process.  In June 2008, the BCC adopted the final budget for FY09, which commenced on July 1, 2008.  No other employees were laid off from the Elections Division.

On July 24, 2008, Shultz filed a Complaint in this Court asserting the following claims:  (1) Claim One under 42 U.S.C.

7  -  OPINION AND ORDER

§ 1983 against the County and Johnson in her individual and official capacities for retaliation against Shultz for exercising her right of free speech, (2) Claim Two against the County for wrongful discharge, and (3) Claim Three under Oregon Revised Statute § 659A.200, *et seq.*, against the County for retaliation against Shultz for reporting conduct that she believed to be unlawful.

On January 30, 2009, Defendants moved for summary judgment as to all of Shultz's claims.

## STANDARDS

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id.*  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues."  *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment.  *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary."  *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material.  *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id*.

## DISCUSSION

Defendants contend they are entitled to summary judgment on

Shultz's claims for (1) violations of Shultz's rights under
§ 1983 against the County and Johnson in her official and
individual capacities; (2) common-law wrongful discharge against
the County; and (3) violations of Oregon Revised Statute
§ 659A.200, *et seq.*, against the County.

**I.    Shultz's § 1983 Claim.**

Defendants contend they are entitled to summary judgment on
Shultz's § 1983 claim because (1) Shultz cannot establish
liability against the County or against Johnson in her official
capacity and (2) Johnson is entitled to absolute immunity in her
individual capacity.

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute
> . . . of any State . . . subjects, or causes
> to be subjected, any citizen of the United
> States . . . to the deprivation of any
> rights, privileges, or immunities secured by
> the [United States] Constitution and laws,
> shall be liable to the party injured in an
> action at law, suit in equity, or other
> proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege facts
that show a person acting under color of state law intentionally
deprived plaintiff of a right, privilege, or immunity secured by
the United States Constitution or federal statute. *L.W. v.
Grubbs*, 974 F.2d 119, 120 (9th Cir. 1992), *cert. denied*, 508
U.S. 951 (1993). *See also Usher v. City of Los Angeles*, 828
F.2d 556, 562 (9th Cir. 1987).

10   -  OPINION AND ORDER

**A.    Shultz's § 1983 claim against Multnomah County and against Johnson in her official capacity.**

Defendants contend Shultz's § 1983 claim alleging retaliation for protected speech fails against Multnomah County and Johnson in her official capacity because (1) there is not any evidence in the record of an unconstitutional policy, pattern, or practice; (2) there is not any evidence in the record that a final policymaker took action against Shultz; and (3) there is not any evidence in the record that a final policymaker ratified the action against Shultz.

As noted, 42 U.S.C. § 1983 provides remedies for the violation of a plaintiff's constitutional rights under color of state law.  The circumstances in which a public entity such as the County may be found liable under § 1983 are "carefully circumscribed." *Fuller v. City of Oakland,* 47 F.3d 1522, 1534 (9th Cir. 1995).  A municipality cannot be liable under § 1983 based on a theory of *respondeat superior*.  *Id.*

The Ninth Circuit summarized three bases for municipal liability claims under § 1983 in *Fuller*:  (1) A plaintiff may demonstrate liability by proving that a county employee committed the alleged violations pursuant to the city's official policy or custom (*Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 694 (1978)); a plaintiff may show the conduct was the result of "a deliberate choice . . . made from among various alternatives by the official

11  -  OPINION AND ORDER

or officials responsible for establishing final policy with
respect to the subject matter in question" (*Pembaur v. City of
Cincinnati,* 475 U.S. 469, 483-84 (1986)); or a plaintiff may show
"an official policymaker either delegated policymaking authority
to a subordinate or ratified a subordinate's decision, approving
the decision and the basis for it" *(City of St Louis v.
Praprotnik,* 485 U.S. 112, 126-27 (1988)).

Shultz does not contest Defendants' assertion that there is
not any evidence in the record that shows the alleged violations
under § 1983 occurred pursuant to an unconstitutional official
policy or custom of the County.  Schultz, however, argues
Wheeler, the County Chair, delegated his final policymaking
authority to Johnson, and, therefore, Johnson's termination of
Shultz's employment was the act of a final policymaker.  In the
alternative, Shultz contends Johnson's allegedly unlawful
termination of Shultz was ratified by Wheeler.

**1.    Whether Johnson is a final policymaker for the
County in the area of employment practices.**

Defendants contend Wheeler, as the County Chair, is the
final policymaker for the County with respect to employment
practices.  Shultz, however, argues Johnson is the final
policymaker with respect to employment practices in the Elections
Division because Wheeler delegated this final policymaking
authority to her.

12    -  OPINION AND ORDER

"Whether an official has final policymaking authority is a question for the court to decide based on state law." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999)(citation omitted). "[T]he identification of those officials whose decisions represent the official policy of the local government unit is . . . a legal question to be resolved by the [court]." *Id*. Generally, municipal policymaking authority is "where the applicable law puts it." *Lytle v. Carl*, 382 F.3d 978, 983 (9th Cir. 2004). "When determining whether an individual has final policymaking authority, [the court] ask[s] whether he or she has authority in a particular area, or on a particular issue." *Id*. (quotation and emphasis omitted). When a person contends the unconstitutional action was an employment action, the relevant area of policymaking authority is that of employment policy. *See Gillette v. Delmore*, 979 F.2d 1342, 1347 (termination of employment is a matter of employment policy).

The Supreme Court has noted it may be difficult to determine when a delegation of final policymaking authority has occurred:

> Simply going along with discretionary decision made by one's subordinates, however, is not a delegation to them of the authority to make policy. It is equally consistent with a presumption that the subordinates are faithfully attempting to comply with the policies that are supposed to guide them.

13   -   OPINION AND ORDER

*Praprotnik*, 485 U.S. at 927.  Two principles provide guidance when determining "whether the policymaker merely has delegated discretion to act, or whether it has done more by delegating final policymaking authority":  (1) "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality" and (2) "when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies." *Christie*, 176 F.3d at 1236 (citations omitted; emphasis in original).

The County Charter, Chapter 6.10, provides the County Chair is the chief "personnel officer of the County" and has the "sole authority to appoint, order, direct, and discharge administrative officers and employees of the County."  The County Charter, however, also provides the County Chair may "delegate his or her administrative powers."  Shultz alleges Wheeler, County Chair, delegated his final employment-policymaking authority to Johnson.

Each County department director and supervisor is required to follow the County Personnel Rules in the administration of employee relationships.  These rules govern

"Seniority and Layoff" and "Discipline and Dismissal," among
other things.  Shultz asserts Wheeler delegated his final
policymaking authority to Johnson because Johnson told Farver
that she "owned" the decision to terminate Shultz and that the
decision was made on Johnson's own authority.  Johnson also was
responsible for the staffing and structure of the Elections
Division and for determining how budget goals were to be
achieved.  Reorganization of the Elections Division was one of
the methods available to her for achieving budget goals.  Even if
Wheeler delegated to Johnson the authority to reorganize the
Elections Division and to terminate employees of the Elections
Division, however, Johnson's employment-related decisions were
"constrained by" the County Personnel Rules as a department
director.  In addition, the Personnel Rules in place were adopted
by the County Chair.  Shultz does not contend and the record does
not reflect that department directors like Johnson had any hand
in the making of the County's Personnel Rules beyond the ability
to make suggestions.  Thus, the County Chair as the official
responsible for adopting the County Personnel Rules, holds the
final authority with respect to making employment-related policy
for the Elections Division.

        Accordingly, the Court concludes on this record that
Johnson is not the final policymaker with respect to employment-
related policy for the Elections Division, and, therefore, her

allegedly unconstitutional conduct is not the act of a final policymaker.

**2.    Whether Wheeler, County Chair, ratified Defendants' allegedly unlawful termination of Shultz's employment.**

In the alternative, Plaintiff contends Wheeler, as County Chair, ratified Defendants' allegedly unlawful termination of Shultz's employment.

As noted, a plaintiff must prove that "authorized policymakers approve a subordinate's decision and the basis for it" to establish ratification. *Christie*, 176 F.3d at 1239 (quoting *Praprotnik*, 485 U.S. at 127). A mere failure to overrule a subordinate's actions without more is insufficient to support a § 1983 ratification claim. *Id. See also Lytle*, 382 F.3d at 987-88)(policymaker must have knowledge of the constitutional violation and actually approve of it); *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996)(policymaker must adopt and "expressly approve of the acts of others who caused the constitutional violation."). "Ordinarily, ratification is a question for the jury. . . . However, as with any jury question, a plaintiff must establish that there is a genuine issue of material fact regarding whether a ratification occurred." *Christie*, 176 F.3d at 1238-39.

The Court has found the County Chair is the final policymaker for employment-related policy at the Elections

16   -  OPINION AND ORDER

Division.  Accordingly, the inquiry is whether Defendants' allegedly unconstitutional act was ratified by Wheeler as County Chair.

> **a.    Whether Wheeler had knowledge of Defendants' alleged constitutional violation.**

Shultz asserts the following facts create a genuine issue of material fact as to whether Wheeler had knowledge of Johnson's allegedly unconstitutional act:

On January 18, 2008, Shultz and three other employees of the Elections Division sent a letter to Wheeler's office regarding the Elections Division's alleged noncompliance with HAVA.  In addition, Wheeler testified at his November 12, 2008, deposition that he had "information that Shultz had warned of noncompliance with the outreach mandate of [HAVA]" before the decision was made to terminate Shultz's employment.  Wheeler, however, did not recall how or precisely when he obtained the information.  Wheeler Dep. 9:7-11.  Johnson issued a layoff letter to Shultz on January 31, 2008.  In addition, Johnson sent Wheeler an email the morning of January 31, 2008, informing him of her decision to terminate Shultz's employment.

The fact that Wheeler was aware of Shultz's warnings and was aware of the decision to eliminate the Assistant Director position does not support an inference that Wheeler was aware of an alleged retaliatory motive on the part of Johnson for eliminating the Assistant Director position.  The Court notes

17  -  OPINION AND ORDER

there is not any evidence in the record that shows Wheeler was aware that Shultz's warnings were specifically aimed at Johnson's acts.  In addition, even if an inference that Wheeler was aware of Johnson's retaliatory motive could be drawn from these facts, Wheeler's knowledge of the allegedly unconstitutional act "does not, by itself, constitute ratification.  Instead, a plaintiff must prove that the policymaker approved of the subordinate's act."  *Christie*, 176 F.3d at 1239.

        **b.    Whether Wheeler expressly approved Defendants' alleged violation of Shultz's constitutional rights.**

Shultz argues Wheeler expressly approved of Johnson's allegedly unconstitutional act by collaborating with Johnson and Bill Farver, Wheeler's Chief Operating Officer, in "repeated" efforts to justify the termination of Shultz's employment.  Even when viewed in the light most favorable to Shultz, however, the record does not support Shultz's position.  The record reflects Johnson, Farver, and Scholes collaborated on a three-page memorandum dated April 9, 2008, that Wheeler requested from Johnson as a response to an April 2, 2008, Oregonian editorial that raised questions regarding the Elections Division.  There is not any evidence in the record that Wheeler collaborated on the memorandum from Johnson that was, in fact, intended as a message for Wheeler.

Wheeler forwarded Johnson's memo to the BCC with a

18  -  OPINION AND ORDER

separate note in which Wheeler stated the "Elections Division was in good hands" and noted the County, however, would continue to be criticized for making budget cuts.  This note is the only evidence in the record of an affirmative act on the part of Wheeler, and it does not include any reference to any actions related to Shultz's termination, her allegedly protected speech, or even to compliance with HAVA generally.  In any event, Wheeler's statements regarding the qualifications of the new Elections Division employees and outside criticism of the County's budget cuts do not give rise to an inference of affirmative and express approval by Wheeler of Johnson's allegedly unconstitutional conduct.  The Court, therefore, concludes on this record that a reasonable juror could not conclude Wheeler ratified Johnson's allegedly constitutional action.

In summary, Shultz has not established a genuine issue of material fact exists as to her § 1983 claim alleging retaliation for allegedly protected speech against the County and against Johnson in her official capacity.  Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Shultz's Claim One against the County and against Johnson in her official capacity.

### B.    Shultz's § 1983 claim against Johnson in her individual capacity.

Johnson contends she is also entitled to summary judgment as to Shultz's § 1983 claim against her in her individual capacity

19  -  OPINION AND ORDER

because Johnson's actions are protected by absolute legislative immunity.

"Officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1988).  "[I]mmunity attaches to all actions taken in the sphere of legitimate legislative activity."  *Id.* (quotation omitted).  "'Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it.'"  *Kaahumanu v. County of Maui*, 315 F.3d 1215, 1219 (9th Cir. 2003)(quoting *Bogan*, 523 U.S. at 49).  "Absolute immunity only applies when legislators act in their legislative capacities, not in their administrative or executive capacities."  *Chateaubriand v. Gaspard*, 97 F.3d 1218, 1220 (9th Cir. 1996).

"[C]ourts generally consider legislators' employment and personnel decisions to be administrative, rather than legislative."  *Id.* at 1221.  Employment decisions, however, that are a result of traditional legislative functions such as adopting a budget are protected legislative acts.  *Id.* at 1221 n.3.  *See also Bogan*, 523 U.S. at 55; *Ratree v. Rockett*, 852 F.2d 946, 950 (7th Cir. 1988)("budgetmaking is a quintessential legislative function").  In addition,

> [a]lmost all budget decisions have an effect
> on employment by either creating or
>
> eliminating positions or by raising or

> lowering salaries.  This reality, however,
> does not transform a uniquely legislative
> function into an administrative one.

*Id*.

To ascertain whether an action is legislative in nature, a court weighs the following factors:

> (1) whether the act involves *ad hoc*
> decisionmaking or the formulation of policy;
> (2) whether the act applies to a few
> individuals or to the public at large;
> [and](3) whether the act is formally
> legislative in nature and . . . bears all the
> hallmarks of traditional legislation.

*Kaahumanu*, 315 F.3d at 1220 (internal quotations and citations omitted).  The burden of proof to show absolute immunity rests with the individual who asserts it.  *Id*.

### 1.    **Whether the act was an *ad hoc* decision.**

In *Kaahumanu*, the Ninth Circuit found an *ad hoc* decision is one that is "based on the circumstances of the particular case," does not "effectuate policy or create a binding rule of conduct," and is directed at and affects individuals rather than the public generally.  315 F.3d at 1220.

Here Shultz acknowledges Johnson's FY09 budget recommendation was one of many steps in the adoption of a County budget by the BCC, *i.e.*, the budget recommendation was forwarded to Wheeler and the BCC for approval and, in addition to eliminating the Assistant Director position, included budget cuts

in other areas.  Johnson testified at her November 12, 2008,
deposition that she was directed by the County Chair in Fall 2007
to cut the DCS budget from three to six percent for FY09.  Emails
from Johnson to Elliot and Johnson's testimony in her
Supplemental Declaration indicate Johnson first identified the
Assistant Director position for elimination in October 2007.  At
his deposition on November 12, 2008, Jim Loeffler, County Human
Resources Manager, testified he advised Johnson on which
management position to eliminate.  Although Shultz argues the
elimination of her position was outside of the budgetary process
because she was laid off before the beginning of FY09, Loeffler
testified that he and Johnson concluded it would be in the best
interests of the County to proceed with the elimination of the
Assistant Director position at that time to allow the new
organization of the Elections Division to be in place before the
May 2008 election.

> The Court concludes the undisputed record shows
Johnson's decision to eliminate the Assistant Director position
was not an *ad hoc* decision, and, therefore, the first factor of
the *Kaahumanu* test weighs in favor of legislative immunity.

> **2.   Whether the act applied to a few individuals or to
>        the public at large.**

> "When the act in question applies to a few individuals
rather than the public at large, legislative immunity is

disfavored." *Id.* at 1222.  "[A] local government's budgetary decision to terminate a position[, however,] can be said to affect all constituents of the locality." *Bechard v. Rappold*, 287 F.3d 827, 830 (2002)(citation omitted). *See also Bogan*, 523 U.S. at 56 ("[T]ermination of a position. . . , unlike the hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office.").

Here the record is replete with references to the elimination of the position of Assistant Director of the Elections Division as a means of covering a budget shortfall for FY09; for example, the County identified the potential shortfall in late 2007, Johnson and others discussed ways to solve the shortfall, and the decision to eliminate the position of Assistant Director was part of the solution.  In addition, the record does not indicate termination of Shultz's employment was "made separately from" the decision to eliminate the position of Assistant Director.  *Bechard*, 287 F.3d at 830.

The Court, therefore, concludes the undisputed record shows that the decision to eliminate the Assistant Director position affected the public at large, and, therefore, the second factor of the *Kaahumanu* test weighs in favor of legislative immunity.

3.   **Whether the elimination of the Assistant Director position was formally legislative in character and bore the traditional hallmarks of legislation.**

The Court "must look beyond the formal character of the act to see whether it contains matter which is properly to be regarded as legislative in its character and effect." *Kaahumanu*, 315 F.3d at 1223.  As noted, budgetary decisions are "quintessentially" legislative in nature.  *Ratree v. Rockett*, 852 F.2d at 950.  An act is not legislative in nature, however, when the acting official's process fails to comply with the law. *Bechard*, 287 F.3d at 831.

Shultz argues Johnson's decision was a unilateral decision and administrative in nature because Johnson did not introduce, vote for, or sign an ordinance.  As noted, however, one does not look only to the "formal character" of the act. *Kaahumanu*, 315 F.3d at 1223.

Shultz has not alleged (and has not offered any evidence) that the process by which Johnson's budget was proposed and adopted was contrary to law.  In fact, the record reflects Johnson acted in accordance with Oregon's budgetary laws; *i.e.*, she identified areas in which cuts could occur, including the elimination of a management position, and created a budget estimate.  *See* Or. Rev. Stat. § 294.352 (estimates of ensuing year to be prepared by organizational unit or program).  She then presented the proposal to the County Chair.  The Chair issued the

proposed budget in April 2008, and the BCC adopted the proposed budget in June 2008. *See* Or. Rev. Stat. § 294.435.

The Court, therefore, concludes the undisputed record here shows that the decision to eliminate the Assistant Director position was formally legislative in nature and bore the traditional hallmarks of legislation. Accordingly, the final factor of the *Kaahumanu* test weighs in favor of legislative immunity.

In summary, the Court concludes on this record that Johnson is entitled to absolute legislative immunity against Shultz's § 1983 claim against Johnson in her individual capacity. The Court, therefore, grants Defendants' Motion for Summary Judgment as to Shultz's Claim One against Johnson in her individual capacity.

**II. Wrongful discharge.**

Defendants also contend they are entitled to summary judgment as to Shultz's Claim Two for wrongful discharge because adequate remedies are provided by 42 U.S.C. § 1983 and Oregon Revised Statute § 659A.203 (Oregon Whistleblower Statute).

Under Oregon law, an employer may discharge an employee at any time for any reason unless doing so violates a contractual, statutory, or constitutional requirement. *Babick v. Oregon Arena Corp.*, 333 Or. 401, 407 (2002)(citing *Patton v. J. C. Penney Co.*, 301 Or. 117, 120 (1986)). The tort of wrongful discharge is a

narrow exception to this general rule.  *Id*.

Oregon courts have recognized two circumstances that give rise to the common-law tort of wrongful discharge:  (1) discharge for exercising a job-related right of important public interest and (2) discharge for complying with a public duty.  *Babick*, 333 Or. at 407.  Examples of the first category include discharge for filing a worker's compensation claim (*Brown v. Transcon Lines*, 284 Or. 597 (1978)) and resisting sexual harassment by a supervisor (*Holien v. Sears, Roebuck & Co.*, 298 Or. 76 (1984)).  Examples of the second category include discharge for serving on jury duty (*Nees v. Hocks*, 272 Or. 210 (1975)), for reporting patient abuse at a nursing home (*McQuary v. Bel Air Convalescent Home, Inc.*, 69 Or. App. 107 (1984)), and for refusing to sign a false report regarding a fellow employee's work-related conduct (*Delaney v. Taco Time Int'l Inc.*, 297 Or. 10 (1984)).

In Oregon, however, the tort of wrongful discharge was not intended to be a tort of general application but rather an interstitial tort to provide a remedy when the conduct in question is unacceptable and no other remedy is available.  *Cantley v. DSMF, Inc.*, 422 F. Supp. 2d 1214, 12220 (D. Or. 2006)(citing *Draper v. Astoria School Dist.*, 995 F. Supp. 1122, 1128 (D. Or. 1998))(internal quotation omitted).  *See also Walsh v. Consolidated Freightways, Inc.*, 278 Or. 347, 351-52 (1977).  "The underlying purpose of that tort in this state is not to

vindicate individual interests of the employee by assuring that
he or she receives the maximum possible recovery, but rather to
protect important public policies by punishing conduct that
thwarts those interests." *Draper v. Astoria School Dist.*, 995
F. Supp. 1122, 1130 (D. Or. 1998).  Thus, a claim for common-law
wrongful discharge is not available in Oregon if (1) an existing
remedy adequately protects the public interest in question and
(2) the legislature has intentionally abrogated the common-law
remedies by establishing an exclusive remedy regardless whether
the courts perceive that remedy to be adequate.  *Olsen v.
Deschutes County*, 204 Or. App. 7, 14 (2006).

**A.    Wrongful Discharge and the Oregon Whistleblower
Statute.**

Defendants contend they are entitled to summary judgment as
to Shultz's wrongful-discharge claim because she has an adequate
remedy under Oregon Revised Statute § 659A.200, *et seq*.

In *Olsen*, "the legislature clearly and affirmatively
expressed its intention that the statutory claim [under
§ 659A.200, *et seq.*,] not supersede common-law claims."  204 Or.
App. at 14.  *See also Huff v. City of Portland*, No. 05-CV-1831,
WL 572152, at *2 (D. Or. Mar. 6, 2006).

The Court, therefore, concludes Shultz's claim under
§ 659A.200, *et seq.*, does not preclude her claim for wrongful
discharge.  *Id*. at 17.

**B.   Wrongful Discharge and § 1983.**

Defendants also contend they are entitled to summary judgment as to Shultz's wrongful-discharge claim because she has an adequate remedy under § 1983.

When determining whether the plaintiff may pursue both a common-law claim for wrongful discharge and a § 1983 claim arising from the same facts, "the question is not whether the existing remedy [under § 1983] is 'the best possible remedy' or 'identical to the tort remedy' but merely whether it is sufficient to 'adequately protect the employment related right.'" *Draper*, 995 F. Supp. at 1134.  This Court has concluded § 1983 generally provides an adequate remedy to protect the public interest in certain employment-related rights of a public employee and, accordingly, has dismissed the plaintiff's wrongful-discharge claims in those cases on summary judgment or in response to motions to dismiss.  *See, e.g.*, *Baynton v. Wyatt*, 411 F. Supp. 2d 1223 (D. Or. 2006); *Carlton v. Marion County*, No. 03-CV-6202, 2004 WL 1442598 (D. Or. Feb. 19, 2002); *Minter v. Multnomah County*, No. 01-CV-352, 2002 WL 31496404 (D. Or. May 10, 2002).

There are circumstances, however, when a claim under § 1983 might not provide an adequate remedy:

> A § 1983 claim will not always provide a
> remedy adequate to preclude an action for
> wrongful discharge.  For instance, a § 1983
> claim ordinarily is unavailable against

28   -  OPINION AND ORDER

>           private employers.  It is also subject to
>           unique defenses, such as qualified immunity.

*Allen v. Oregon Health Sciences University*, No. 06-CV-285,

WL 2252577, at *3-4 (D. Or. Aug. 4, 2006)(citation omitted).

Thus, when a § 1983 remedy is not available as a matter of law,

this Court has concluded a plaintiff may pursue a wrongful-

discharge claim.  *See Huff*, 2006 WL 572152, at *3.  *See also Dier*

*v. City of Hillsboro*, No. 02-CV-24, WL 1243845 (D. Or. Mar. 18,

2004).

      Here, as in *Dier*, § 1983 does not provide an adequate

statutory remedy to Shultz because, as a matter of law, the

County "could never be liable to [Shultz] on a theory of

*respondeat superior* for the alleged misconduct of nonpolicy-

makers." *Dier*, 2004 WL 1243845, at *10.  In addition, the Court

has held Johnson has absolute immunity from Shultz's claim

against her in her individual capacity, a unique defense that may

prevent § 1983 from providing an adequate remedy.  *Allen*,

WL 2252577, at *3-4.

      The Court, therefore, concludes on this record that

42 U.S.C. § 1983 and Oregon Revised Statute § 659A.200, *et seq.*,

do not provide adequate remedies to require dismissal of Shultz's

wrongful-discharge claim.  Accordingly, the Court denies

Defendants' Motion for Summary Judgment as to Shultz's Claim Two.

### III. Shultz's whistleblowing claim.

Defendants contend they are entitled to summary judgment as to Shultz's claim against the County under § 659A.200, *et seq.*, Oregon's public-employee whistleblower law. Shultz alleges the County violated Oregon Revised Statute § 659A.200, *et seq.*, when the County terminated her employment in retaliation for her report about Defendants' wrongful conduct in allegedly failing to comply with HAVA by making changes to the VAT program.

### A. Retaliation under Oregon Revised Statute § 659A.200, *et seq.*

It is an unlawful employment practice for a public employer to:

> Prohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of:
>
> (A) A violation of any federal or state law, rule or regulation by the state, agency or political subdivision; [or]
>
> (B) mismanagement, gross waste of funds or abuse of authority.

Or. Rev. Stat. § 659A.203(1)(b).

In the absence of an Oregon case construing this statute, this Court applies the standards for claims of retaliation under Title VII to claims of retaliation under the Oregon Whistleblower Act. *See Nederhiser v. Foxworth*, No. 05-CV-787, WL 869710, at *5 (D. Or. Mar. 21, 2007). To establish a *prima facie* case of

30  -  OPINION AND ORDER

retaliation under Or. Rev. Stat. § 659A.203, Shultz must show:
"(1) [S]he engaged in protected activity; (2) she suffered an
adverse employment action; and (3) she suffered the adverse
employment decision because she engaged in the protected
activity, that is, there is a causal link between her activity
and the employment decision." *Scruggs v. Josephine County*,
No. 06-CV-6058, WL 5262717, at *1 (D. Or. 2008)(quoting *Clarke v.
Multnomah County*, No. 06-CV-229, WL 915175, at *14 (D. Or.
Mar. 23, 2007), *declined to follow on other grounds by Posey v.
Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121 (9th Cir.
2008). *See also Minter v. Multnomah County*, No. 01-CV-352,
WL 31496404, at *6 (D. Or. May 10, 2002).

   **B.    Protected activity.**

   Defendants contend Shultz cannot establish a *prima facie*
case as to her § 659A.203 retaliation claim because she cannot
show she engaged in the protected activity of disclosing
wrongdoing on the part of Defendants.

   A "disclosure" under § 659A.203 is a report of "wrongdoing
within an agency or department." *Scruggs*, WL 5262717, at *1
(citing *Bjurstrom v. Or. Lottery*, 202 Or. App. 162, 169-71
(2005)). No other Oregon cases have further elaborated on the
meaning of "disclosure" under § 659A.203. In the absence of
further guidance, this Court applies the standards governing
disclosures under the similarly-worded federal Whistleblower Act

31   -  OPINION AND ORDER

of 1989 (WPA), 5 U.S.C. § 2302(8)(a).  *See Clarke*, 2007 WL
915175, at *14.  *See also Minter*, 2002 WL 31496404, at *7 n.3.
Under the WPA, a disclosure is protected only if it is "made to a
person who was previously unaware of the information, meaning
someone 'in a supervisory position, other than the wrongdoer
himself.'"  *Clarke*, 2007 WL 915175, at *14 (quoting *Huffman v.
Office of Personnel Mgmt.*, 263 F.3d 1341, 1351 (Fed. Cir. 2001)).
In addition,

> there may be situations where a government
> employee reports to the wrongdoer that the
> conduct of the wrongdoer is unlawful or
> improper, and the wrongdoer, though aware of
> the conduct, was unaware that it was unlawful
> or improper.  Nonetheless, the report would
> not be a protected disclosure. . . .  [T]he
>
> disclosure must pertain to the underlying
> conduct, rather than to the asserted fact of
> its unlawfulness or impropriety, in order for
> the disclosure to be protected. . . .

*Id*. at *15 (quoting *Huffman*, 263 F.3d at 1350 n.2).

As noted, the underlying wrongful conduct alleged by Shultz
is Johnson's act of reducing VAT program services by eliminating
temporary VAT employees and VAT outreach to care facilities that
had previously used VAT services.  Shultz alleges Johnson
commenced these acts sometime after the publication of the 2007
Audit in June 2007 and that Johnson finalized these acts on
November 30, 2007.

### 1.  Disclosure to Johnson.

As noted, for disclosure to constitute protected

activity under Oregon Revised Statute § 659A.203, it must be made
to someone other than the wrongdoer. *Clarke*, 2007 WL 915175, at
*14. Here Shultz alleges Johnson is the wrongdoer in her
budgetary decisions concerning the VAT program and its impact on
the Elections Division's HAVA compliance. Accordingly, the Court
concludes Shultz's reports to Johnson are not protected activity
under § 659A.203.

### 2.    Disclosure to Wolf.

Wolf, who previously worked directly for Johnson,
started working as Shultz's supervisor on October 1, 2007.
Shultz asserts she repeatedly reported to Wolf that Johnson's
decision to reduce VAT staffing in response to the 2007 Audit
might cause the Elections Division to face litigation if the
Elections Division failed to provide requested assistance to a
voter with disabilities. The record, however, is not clear as to
when Shultz first raised these issues with Wolf, but, as a
practical matter, any statements Shultz made to Wolf before she
became Shultz's supervisor were not disclosures within the
meaning of § 659A.203. *See Clarke*, 2007 WL 915175, at *14 (a
disclosure is protected only if it is made to someone in a
supervisory position). In any event, Wolf testified at her
November 18, 2008, deposition that she was aware of Johnson's
plans for cuts in the VAT program in response to the 2007 Audit
even before Wolf commenced her supervisory duties in the

33   -   OPINION AND ORDER

Elections Division on October 1, 2007.  As noted, the disclosure must pertain to the underlying conduct in order to be protected activity rather than to the asserted fact of its unlawfulness or impropriety.  *See Clarke*, 2007 WL 915175 at *15.  Accordingly, even though the record reflects Wolf may have been unaware of the alleged unlawfulness or impropriety of Johnson's VAT cuts before Shultz informed her, Wolf was aware of the underlying conduct before she received Shultz's report, and, therefore, Shultz did not "disclose" to Wolf the underlying conduct.

Accordingly, on this record, the Court concludes Shultz did not make a disclosure to Wolf within the meaning of § 659A.203, and, therefore, her statements to Wolf were not a protected activity.

        **3.    Disclosure to Farver.**

Shultz alleges she had a telephone conversation with Farver in which she stated Johnson's plan for VAT would put the Elections Division in noncompliance with VAT.  Farver testified in his November 12, 2008, deposition, however, that he had participated in ongoing discussions with Johnson regarding general budget issues before he spoke to Shultz.  Those discussions included the issues raised by Shultz.  In addition, Johnson testified in her November 12, 2008, deposition that she had informed Farver of her plans to downsize VAT in mid-November 2007.  Again, the record reflects Farver may have been unaware of

the alleged unlawfulness or impropriety of Johnson's VAT cuts before Shultz's report, but the record does not indicate he was unaware of Johnson's underlying conduct.

Thus, on this record, the Court concludes Shultz did not make a disclosure to Farver within the meaning of § 659A.203, and therefore, her statement to Farver was not a protected activity.

### 4.  Disclosure to Wheeler.

Shultz wrote a January 18, 2008, letter to Wheeler's office in which she stated Johnson's decision to stop providing outreach to disabled voters could result in increased legal exposure under HAVA. Shultz's January 18, 2008, letter is the only statement that Shultz asserts she made to Wheeler regarding Johnson's allegedly wrongful conduct. Wheeler, however, testified at his November 12, 2008, deposition that he did not recall ever having seen Shultz's January 18, 2008, letter and that he would expect such a letter to go to Farver, his chief operating officer. Nonetheless, the fact Wheeler does not recall reading the letter does not conclusively prove the absence of a disclosure when these facts are viewed in the light most favorable to Shultz. Thus, rational jurors could infer from all of the circumstances Wheeler read the letter. The Court, therefore, concludes a reasonable juror could find Shultz made a disclosure to Wheeler within the meaning of Oregon Revised

Statute § 659A.203, and, therefore, engaged in a protected activity under § 659A.203 with respect to that disclosure.

     **5.   Disclosure to Kauffman.**

     On November 26, 2007, Shultz reported her concern to Kauffman that a lack of staffing to provide services to voters would put the Elections Division in violation of HAVA.  The record does not reflect Kauffman knew about Johnson's plans in regard to HAVA before Shultz's report.  In fact, in a January 13, 2008, letter to Johnson, Kauffman states Johnson told him about her plans to downsize the VAT program on November 30, 2007.  Construing the facts in the light most favorable to Shultz, rational jurors could conclude Kauffman was not aware of Johnson's plans for VAT until he was informed by Shultz.  The Court, therefore, concludes a reasonable juror could find Shultz made a disclosure to Kauffman within the meaning of Oregon Revised Statute § 659A.203, and, therefore, engaged in a protected activity under § 659A.203 with respect to that disclosure.

     In summary, the Court concludes on this record that Shultz has established the first element of her *prima facie* whistleblower claim under § 659A.203 only as to her disclosures to Wheeler and Kauffman.

     **C.  Causal link.**

     Defendants contend even if Shultz engaged in a protected

activity, she cannot establish a *prima facie* case on her § 659A.203 claim because she cannot show a causal link existed between her protected activity and the termination of her employment. The parties do not dispute the termination of Shultz's employment was an "adverse employment action."

"To prove causation, [a] plaintiff must establish that 'in the absence of the discriminatory motive, the employee would have been treated differently.'" *Nederhiser*, 2007 WL 869710 at *5 (citing *Hardie v. Legacy Health Sys.,* 167 Or. App. 425, 435 (2000), *partially superseded by statute on other grounds*).

Although the Court has concluded Shultz established the first element of her *prima facie* whistleblower claim based on her disclosure to Kauffman on November 26, 2007, the record does not reflect that either Wheeler or Kauffman informed Johnson of Shultz's disclosure. Even if Johnson was aware of Shultz's disclosures to Wheeler and Kauffman, Johnson stated in her Supplemental Declaration that she identified the Assistant Director position for elimination in October 2007, which was more than a month before Shultz made her disclosure to Kauffman and three months before Shultz made her disclosure to Wheeler. In addition, October 19, 2007, emails from Johnson to Elliot indicate a plan to eliminate a management position.

In summary, the Court, therefore, concludes on this record that Shultz has not established a causal link between her

allegedly protected activity under Oregon Revised Statute
§ 659A.203 and the termination of her employment.

Accordingly, the Court grants the Defendants' Motion for
Summary Judgment as to Shultz's Claim Three.


<u>**CONCLUSION**</u>

For these reasons, the Court **GRANTS** Defendants' Motion in
part and **DENIES** Defendants' Motion in part as follows:

1.    **GRANTS** Defendants' Motion as to Shultz's Claim One
against Multnomah County for violations of 42 U.S.C. § 1983;

2.    **GRANTS** Defendants' Motion as to Shultz's Claim One
against Johnson in her official and her individual capacities for
violations of 42 U.S.C. § 1983;

3.    **DENIES** Defendants' Motion as to Plaintiff's Claim Two
against Multnomah County for wrongful discharge; and

4.    **GRANTS** Defendants' Motion as to Plaintiff's Claim Three
against Multnomah County for violations of Oregon Revised Statute
§ 659A.200, *et seq*.

IT IS SO ORDERED.

DATED this  _26th_ day of May, 2009.


__/s/ Anna J. Brown____
ANNA J. BROWN
United States District Judge


38   -   OPINION AND ORDER